JAMES MORRETT, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.*

Supreme Court, Schenectady County, September 1, 1934.

---

* Affd., —— App. Div. ——.

*Leary & Fullerton,* for the plaintiff.

*Brackett & Eddy [Spencer B. Eddy* of counsel], for the defendant.

BREWSTER, J. The policies sued upon provide for accidental, in addition to the ordinary death benefits. The material portions of the former are as follows: " Upon receipt of due proof that the insured * * * has sustained * * * bodily injuries solely through external, violent and accidental means, resulting directly and independently of all other causes, in the death of the insured, the Company will pay * * *.

" No accidental death benefit will be paid * * * if death is caused or contributed to directly or indirectly or wholly or partially by disease or any bodily or mental infirmity."

Plaintiff is the surviving husband of the insured and the beneficiary named in the policies. The insured died at Ellis Hospital, March 12, 1933, at ten-forty-eight o'clock A. M. The immediate cause of her death was loss of blood occasioned by an intrauterine hemorrhage. At that time she was in the last stages of pregnancy. Her doctor, who had been examining her at monthly intervals, had predicted that her delivery would occur about March 20, 1933 — eight days later than the occurrence of her fatal hemorrhage.

Plaintiff's proofs disclose that insured had a condition incident to her pregnancy known as placenta previa of the central type. This described a condition where the placenta is so attached to the intrauterine wall as to cover the cervix or natural opening into the womb through which, naturally, the child must pass in the actuality of birth. The placenta is a vascular structure designed to receive the mother's blood and prepare it for the functions of foetal growth and the elimination of all excretory and waste matter incident thereto, the transference being accomplished by the intermediary agencies of the umbilical vessels. The norm in nature selects a place for the attachment of the placenta on the inner walls of the womb other than over or partially over the cervix. In a normal birth the child emerges from the womb previous to the placenta, and thereafter the latter detaches and emerges, and, in that process of so-called after birth, the womb contracts in such manner as to prevent serious hemorrhage from the blood supply of the mother. In a case of placenta previa, central type, as in the case at issue, the normal is departed from with the serious consequence that nature's process for the prevention of hemorrhage cannot function. Detachment of the placenta or a breaking through of the placental

substance must then occur previous to the birth of the child. Hemorrhage is inevitable and progresses until birth is complete. In such cases mortality is high.

The facts found by the jury are that a fall, an external violent and accidental means resulting directly and independently of all other causes, started the fatal hemorrhage; that it was such accident, and not the imminence of the beginning of birth, which precipitated the detachment or rupture of the abnormally placed placenta, with fatal consequence.

The question, then, saved by the reservation of decision of defendant's motion for nonsuit, is, as I view it, whether this condition of placenta previa was, within the fair construction of the policies' term, a "bodily infirmity which directly or indirectly, wholly or partially," contributed in the causation of death. That such condition did, at least, contribute in causation is of course patent. Plaintiff's proofs establish that, medically, placenta previa was the very cause of the fatal intrauterine hemorrhage. Narrowed down, then, the question may be stated thus: Is placenta previa a bodily infirmity? Admittedly it is a departure from the norm. More than that, it is an abnormality portentous of direful consequence. "In its natural and probable development it may be expected to be a source of mischief." (*Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81, 84.) When its meaning and nature is understood, I cannot but feel that it would be considered an infirmity "in the common speech of men." It was not a mere "predisposing tendency" toward the suffering of harm. It was a reality. Eight days later, at most, it would have had to have been coped with. There was no escape. It rendered her life in grave danger. Only the highest medical and surgical skill could have possibly mastered the situation. The attending physician did not know of its existence until after the onslaught of the hemorrhage. Obviously, thereafter the time was short, and ordinarily it would be too short for the arrangement and preparation that might make successful the chance of survival. A blow fatal only because of the thinness of the skull upon which it landed is the sole factor in causation of the consequences, because an abnormally thin skull constitutes a mere chance of injury — a predisposing tendency. It is not an infirmity in the sense that in the probability of natural consequence it predisposes to injury. But in the instant case we have a certainty that the natural consequence of the abnormal condition foretold danger. We have here an "idiosyncratic condition of * * * body" which predisposed to injury. (*McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 220, 221.) Such a condition insured had at the time of her accident. Such the condition of placenta previa is, and of that

condition death was the consequence. Thus even though the fact be that an accident precipitated the inevitable hemorrhage, the fundamental and chief acting factor in the causation of death was the physical defect, imperfection, infirmity, occasioned by the fortuity of placenta previa.

Defendant's reserved motion for nonsuit is accordingly granted. Submit order.